UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHOSHANA MINZER, <br><br> Plaintiff, <br><br> v. <br><br> EMAGIN CORPORATION, ERIC BRADDOM, PAUL CRONSON, ELLEN RICHSTONE, ANDREW G. SCULLEY, ELMER STEPHEN M. SEAY, and JILL J. WITTELS, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Shoshana Minzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against eMagin Corporation ("eMagin" or the "Company") and the members of eMagin's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which eMagin will be acquired by Samsung Electronics Co., Ltd. ("Samsung") through Samsung's subsidiaries Samsung Display Co., Ltd. ("Parent"), Emerald

Intermediate, Inc. ("Silk USA"), and Emerald Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On May 17, 2023, eMagin issued a press release announcing that it had entered into an Agreement and Plan of Merger, dated May 17, 2023, to sell eMagin to Samsung (the "Merger Agreement"). Under the terms of the Merger Agreement, eMagin shareholders will receive $2.08 in cash for each share of eMagin common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $218 million.

3. On July 20, 2023, eMagin filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that eMagin stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) eMagin management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Nomura Securities International, Inc. ("Nomura") and; (iii) Nomura's and Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as eMagin stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, eMagin's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, eMagin's common stock trades on The New York Stock Exchange American, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of eMagin.

9. Defendant eMagin is a Delaware corporation, with its principal executive offices located at 700 South Drive, Suite 201, Hopewell Junction, New York 12533. eMagin engages in the design, develop, manufacture, and market of organic light emitting diode ("OLED") miniature displays on-silicon micro displays, virtual imaging products that utilize OLED micro displays, and related products in the United States and internationally. eMagin's shares trade on The New York Stock Exchange American under the ticker symbol "EMAN."

10. Defendant Eric Braddom ("Braddom") has been a director of the Company since October 2018.

11. Defendant Paul Cronson ("Cronson") has been a director of the Company since July 2003.

12. Defendant Ellen Richstone ("Richstone") has been a director of the Company since July 2014.

13. Defendant Andrew G. Sculley ("Sculley") has been Chief Executive Officer ("CEO") since June 1, 2008, and a director of the Company since November 2, 2009.

14. Defendant Stephen M. Seay ("Seay") has been a director of the Company since January 2006.

15. Defendant Jill J. Wittels ("Wittels") has been Chair of the Board and a director of the Company since August 2011, and previously served as a director from 2003 to 2006.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. Samsung engages in the consumer electronics, information technology and mobile communications, and device solutions businesses worldwide. Samsung offers smartphones, tablets, watches, and accessories; TVs, projectors, and sound devices; home appliances, including refrigerators, washing machines and dryers, vacuum cleaners, cooking appliances, dishwashers, air conditioners, and air purifiers; monitors, and memory and storage products; displays, and smart and LED signages; and other accessories.

18. Parent is a global leader of cutting-edge display solutions. Parent diversifies display applications not only for smartphones, TVs, laptops, and monitors but also for

smartwatches, game consoles and automotive applications, and has close partnerships with a variety of global manufacturers. Parent is leading the foldable display market based on its innovative technology, enabling the world's first mass-production of OLED and Quantum Dot-OLED, and endeavors to develop next-generation technology such as slidable, rollable, and stretchable displays to provide new experiences and possibilities to consumers.

19. Silk USA is a Delaware corporation and a wholly owned subsidiary of Parent.

20. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Silk USA.

**SUBSTANTIVE ALLEGATIONS**

**<u>Background of the Company</u>**

21. eMagin designs, develops, manufactures, and markets organic light emitting diode, or OLED miniature displays, which eMagin refers to as OLED-on-silicon microdisplays, virtual imaging products that utilize OLED microdisplays, and related products. eMagin also performs research in the OLED field. eMagin is one of the leading U.S. producers of OLED microdisplays and manufactures its products at its facility located in the Hudson Valley of New York State.

22. On May 11, 2023, the Company announced its first quarter 2023 financial results and business developments. Reflecting on the Company's progress, defendant Sculley stated:

> Our first-quarter results were mixed due to the timing of orders under the ENVG-B programs and $0.4 million of revenue that was delayed to the current quarter due to unexpected manufacturing downtime with one of our legacy deposition tools.
>
> We continue to upgrade our preventative maintenance procedures and take every action possible to maintain the effectiveness of this older equipment until our new production-capable dPd tool comes online in 2024. We are pleased with our total sales backlog, which remains strong at $16.0 million, comparable to the end of Q4 2022, reflecting continued strength in bookings for the military and medical markets, and expect to receive additional follow-on orders under the ENVG-B programs this quarter.
>
> We are excited to report that the upgraded Direct Patterning Display (dPdTM) deposition chamber we received in December has already demonstrated the

potential of this disruptive technology. This updated R&D chamber will be used to produce prototype displays in small quantities for both military and commercial markets. As we recently announced, we have produced an ultra-high brightness 15,000 cd/m2 display using this R&D chamber that surpassed the previous OLED microdisplay luminance record of 10,000 cd/m2, which we set just 18 months ago. This milestone is well beyond the threshold requirements for immersive AR and VR devices and will help to overcome inefficient optics and alleviate motion artifacts. Moreover, this latest development will enable our military, consumer, and commercial customers to implement new and advanced features that to date have not been technically feasible, while greatly improving power efficiency and battery life.

We delighted to announce that in March, an innovative, production-capable dPd tool, which was designed to our specifications and ordered last year, arrived safely at the Port of Newark. This large, 160 metric ton tool will allow us to produce both commercial quantities of dPd technology displays in addition to expanding our existing OLED technology. The addition of this tool, when fully qualified, is expected to more than double our overall production capacity. We believe that the impressive results of the upgraded R&D chamber, which shares similar design elements, demonstrate the exciting potential of our new production-capable dPd tool. We expect delivery of the new dPd tool to our newly expanded cleanroom by the end of the month, followed by installation and qualification of the tool, with first production runs expected next year.

Our proprietary dPd technology directly patterns primary RGB color OLED emitters on our silicon backplane, which creates ultra-high brightness light output at ultra-high resolutions with brilliant colors. This is in stark contrast to competing products that utilize color filters with white OLED that significantly degrades the light output. As we continue to advance this technology, future dPd milestones will include the addition of tandem OLED structures and other enhancements that will take the performance of AR/VR headsets and heads-up displays to even greater heights.

During the second quarter, we expect to resume the proof-of-concept work for a tier-one consumer company that was delayed pending the upgrade to the R&D chamber. Additionally, we will continue work under the US Army's Program Executive Office for Simulation Training and Instrumentation (PEO STRI) contract to provide high-brightness microdisplays and expect to produce several displays required by the next phase of this contract.

We look forward to continuing to serve our important military and medical and consumer customers, beginning qualification of the new dPd production tool, and presenting our dPd technology-based products to customers building consumer devices.

**The Proposed Transaction**

23. On May 17, 2023, eMagin issued a press release announcing the Proposed Transaction, which states, in relevant part:

> HOPEWELL JUNCTION, N.Y., May 17, 2023 (GLOBE NEWSWIRE) -- eMagin Corporation (NYSE American: EMAN) ("eMagin" or the "Company"), a U.S.-based leader in the development, design, and manufacture of Active-Matrix OLED microdisplays for high-resolution, AR/VR and other near-eye imaging products, today announced that the Company has entered into a definitive merger agreement with Samsung Display Co., Ltd. ("Samsung Display"), a subsidiary of Samsung Electronics Co., Ltd. (KRX: 005930) and manufacturer and distributor of display products. Under the terms of the agreement, all outstanding shares of eMagin common stock on a fully diluted basis will be acquired for $2.08 per share in cash, in a transaction valued at approximately $218 million.
>
> The purchase price represents a premium of approximately 10% to eMagin's closing stock price of $1.89 on May 16, 2023, and a premium of approximately 24% to eMagin's six-month volume-weighted average price of $1.68.
>
> "This agreement is a validation of our technical achievements to date including our proprietary direct patterning (dPd) technology, provides a significant premium for our shareholders, and represents a win for our customers and employees," said Andrew G. Sculley, eMagin's Chief Executive Officer. "By teaming with Samsung Display, we will be able to achieve the full potential of our next-generation microdisplay technology with a partner that can provide the resources and expertise we will need to scale production. Moreover, our customers will benefit from resulting improvements to our production capabilities in terms of yield, efficiency, and quality control."
>
> President & Chief Executive Officer of Samsung Display, Joo Sun Choi, emphasized the strategic significance of the acquisition, stating, "We expect XR (Extended Reality) devices to have significant potential of growth in the future, and eMagin's technology in this space will enable Samsung to offer innovative products to more customers and strengthen its XR-related business."
>
> Following the closing of the transaction, eMagin will continue to maintain its operations and facilities in Hopewell Junction, NY.
>
> **Approvals and Timing**
>
> eMagin's Board of Directors has unanimously approved the transaction and is recommending that eMagin's stockholders approve the transaction and adopt the merger agreement at a special meeting of stockholders to be called in connection with the transaction. Certain of eMagin's stockholders who collectively hold

approximately 98% of the total voting power of eMagin's Series B Convertible Preferred Stock, which is convertible into approximately 21% of the total voting power of eMagin's common stock on a fully diluted basis, have entered into a support agreement pursuant to which they have committed to vote such shares in favor of the transaction.

The transaction is expected to close in the second half of 2023, subject to the approval by eMagin's stockholders, applicable regulatory approvals and other customary closing conditions. Until closing, eMagin and Samsung Display remain separate and independent companies.

**Advisors**

Nomura Securities International, Inc. is serving as exclusive financial advisor to eMagin. White & Case LLP and Goodwin Procter LLP are acting as the Company's legal counsel. Evercore Inc. is serving as exclusive financial advisor to Samsung Display and O'Melveny & Myers LLP is acting as legal counsel.

**Insiders' Interests in the Proposed Transaction**

24. eMagin insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of eMagin.

25. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Samsung. Under the terms of the Merger Agreement, all Company options and restricted share units ("RSUs") will vest and convert into the right to receive cash payments, as set forth in the following table:

| | Number of Shares Subject to Vested In-the-Money Options (#)[1] | Weighted Average Exercise Price of Vested In-the-Money Options ($) | Number of Shares Subject to Unvested In-the-Money Options (#)[2] | Weighted Average Exercise Price of Unvested In-the-Money Options ($) | Value of Shares Subject to In-the-Money Options ($) | Number of Unvested Company RSUs (#)[3] | Value of Shares Subject to Unvested Company RSUs ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|
| **The Company's Executive Officers** | | | | | | | | |
| Andrew G. Sculley | — | — | — | — | — | 17,128 | 35,626 | 35,626 |
| Mark A. Koch | — | — | — | — | — | 317,230 | 659,838 | 659,838 |
| Amalkumar Ghosh | — | — | — | — | — | 1,119,321 | 2,328,188 | 2,328,188 |
| Olivier Prache | — | — | — | — | — | 13,042 | 27,127 | 27,127 |
| **The Company's Non-Employee Directors** | | | | | | | | |
| Eric Braddom | 197,732 | 0.83 | 22,500 | 0.73 | 278,173 | — | — | 278,173 |
| Paul Cronson | 345,688 | 0.88 | 22,500 | 0.73 | 446,902 | — | — | 446,902 |
| Ellen Richstone | 345,688 | 0.88 | 22,500 | 0.73 | 446,902 | — | — | 446,902 |
| Stephen M. Seay | 345,688 | 0.88 | 22,500 | 0.73 | 446,902 | — | — | 446,902 |
| Dr. Jill J. Wittels | 683,924 | 0.87 | 45,000 | 0.73 | 884,934 | — | — | 884,934 |

26. Moreover, if they are terminated in connection with the Proposed Transaction, eMagin's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Andrew G. Sculley | 440,000 | 35,626 | 10,451 | 486,077 |
| Mark A. Koch[4] | 250,000 | 659,838 | 10,794 | 920,632 |
| Dr. Amalkumar Ghosh | 355,000 | 2,328,188 | 20,653 | 2,703,841 |

**The Proxy Statement Contains Material Misstatements and Omissions**

27. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Nomura; and (iii) Nomura's and Company insiders' potential conflicts of interest. Accordingly, eMagin stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning eMagin's Financial Projections*

28. The Proxy Statement fails to disclose material information with respect to the company's financial projections.

29. For example, with respect to the Base Case Forecast and Illustrative Upside Case Forecast, the Proxy Statement fails to disclose the line items underlying Adjusted EBITDA and Unlevered Free Cash Flow.

30. The omission of this information renders the statements in the "Certain Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Nomura's Financial Analyses*

31. The Proxy Statement also describes Nomura's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Nomura's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, eMagin's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Nomura's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to eMagin's stockholders.

32. With respect to Nomura's *Discounted Cash Flow Analysis—Base Case* and *Discounted Cash Flow Analysis—Illustrative Upside Case*, the Proxy Statement fails to disclose: (i) quantification of the terminal values; and (i) quantification of the inputs and assumptions underlying the discount rates used in the analyses.

33. The omission of this information renders the statements in the "Opinion of Nomura" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Nomura's and Company Insiders' Potential Conflicts of Interest***

34. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Nomura.

35. The Proxy Statement fails to disclose the details of any services performed by Nomura for Stillwater Holdings LLC, MDAS 2012 Children's trust and Ginola Limited or their affiliates in the two years prior to Nomura rendering its fairness opinion in connection with the Proposed Transaction, and, if services were provided, the fees received by Nomura for such services.

36. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

37. The omission of this information renders the statements in the "Opinion of Nomura," "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

38. Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by eMagin insiders.

39. The Proxy Statement fails to disclose whether any of eMagin's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that

occurred between Parent and eMagin's executive officers, including who participated in all such communications, when they occurred and their content.

40. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Certain Persons in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of eMagin will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about (i) the Company's financial projections; (ii) the inputs and assumptions underlying Nomura's financial analyses; and (iii) Nomura's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of eMagin within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of eMagin, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, eMagin stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of eMagin, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to eMagin stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 11, 2023

**WEISS LAW**

By _____
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, Ga 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*